**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRIDGETTE BRYAN and<br>SPIN-LEARNING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND LEARNING, LLC,<br>ASSESSMENT TECHNOLOGIES<br>INSTITUTE, L.L.C.,<br>SCOTT NOVORR, and<br>SANDRA MILLER,<br><br>Defendants. | Case No. _____ |

**COMPLAINT, REQUEST FOR INJUNCTIVE RELIEF, AND**
**JURY DEMAND**

**INTRODUCTION**

1.   Plaintiffs, Bridgette Bryan and SPIN-Learning, LLC (together, the "Plaintiffs"), bring this action against the Defendants, Ascend Learning, LLC and Assessment Technologies Institute, L.L.C., Scott Novorr, and Sandra Miller (collectively, the "Defendants"), to obtain injunctive relief and recover losses suffered as a result of Defendants' violations of the Sherman Act, tortious interference with Plaintiffs' business relations, and defamation, among other claims, in connection with the Defendants' monopoly of its industry, Defendants' defamatory actions against the Plaintiffs within their shared professional community, and Defendants' consistent pattern of intentionally interfering with Plaintiffs' business endeavors.

2.   By their own admission, Ascend Learning, LLC and Assessment Technologies Institute, L.L.C. (hereinafter, together, the "Company"), are leading providers in their fields of integrated software, assessments, learning content, among other solutions.

3.   Specifically, ATI boasts having over 1,900 nursing schools in the United States as its customers. Upon information and reasonable belief, that means that ATI maintains an approximate seventy-three percent (73%) ownership of the market in their industry.

1

4.      Despite their prolific presence in the industry, or perhaps because of, the Defendants have engaged in a smear campaign against the Plaintiffs including SPIN which, since its formation, has had one (1) customer.

5.      The Defendants' bullying tactics have resulted in tortious and predatory interference with Plaintiffs' business and reputation.

6.      Plaintiffs also allege the predatory business practices of the Defendants constitute violations of U.S. antitrust law and seek a remedy, together with injunctive relief.

## THE PARTIES

7.      Plaintiff, BRIDGETTE BRYAN ("Ms. Bryan"), is an individual residing in Biloxi, Mississippi.

8.      Plaintiff, SPIN-LEARNING, LLC ("SPIN"), is a Mississippi limited liability company with a principal business address located in Biloxi, Mississippi.

9.      Upon information and reasonable belief, Defendant, ASCEND LEARNING, LLC ("Ascend"), is a Delaware limited liability company with a principal place of business located at 25 Mall Road, 6th Floor, Burlington, Massachusetts 01803.

10.     Upon information and reasonable belief, Defendant, ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C. ("ATI"), is a Delaware limited liability company and wholly owned subsidiary of Ascend having a principal place of business located at 11161 Overbrook Road, Leawood, Kansas 66211.

11.     Upon information and reasonable belief, Defendant, SCOTT NOVORR ("Mr. Novorr"), is an individual residing at 8800 W 157th Street, Overland Park, Kansas.

12.     Upon information and reasonable belief, Mr. Novorr is employed as ATI's Regional Vice President of the Great Lakes region.

13.     Upon information and reasonable belief, Defendant, SANDRA MILLER ("Ms. Miller"), is an individual residing at 1401 El Rito Avenue, Glendale, California.

14.     Upon information and reasonable belief, Ms. Miller is employed as ATI's Vice President of Sales of the West region.

## JURISDICTION AND VENUE

15.     Federal question jurisdiction is conferred upon this Court pursuant to "The Sherman Act", 15 U.S.C. § 1, *et seq*. and "The Clayton Act", 15 U.S.C. § 13, *et seq*.

16.    Additionally, Section 1337 of the Judicial Code (28 U.S.C.) expressly confers original jurisdiction on the United States District Courts over any civil action "arising under an act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Moreover, this Court has jurisdiction under Section 1331, which permits a federal court to exercise jurisdiction in cases involving "federal questions."

17.    This Court has personal jurisdiction over Defendants, Mr. Novorr and Ms. Miller, as they are employees of Ascend, which company is located in Massachusetts.

18.    This Court has jurisdiction to hear the state law claims herein under the Pendant Claims Doctrine.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3).

## FACTS COMMON TO ALL COUNTS

20.    Upon information and reasonable belief, Ascend is an online educational provider of integrated software, assessments, learning content and analytics solutions through which Ascend provides individuals with academic support in a variety of career fields and industries, including healthcare.

21.    Upon information and reasonable belief, ATI is one of Ascend's healthcare education businesses, with a specialized focus on nursing education. ATI provides products and services used by nursing programs to assist nursing students in mastering the curriculum, graduating from nursing school, passing the National Council Licensure Examination ("NCLEX"), and developing practical experience.

22.    Upon information and reasonable belief, ATI has over 1,900 nursing school customers and maintains a monopoly over its industry.

### *Ms. Bryan's Employment With ATI And Subsequent Resignation*

23.    In or around June or July 2010, Ms. Bryan began working for the Company as a part-time contractor/nurse educator.

24.    Ms. Bryan was offered full-time employment with the Company as an LR Educator/NCLEX Specialist in the Research & Development Department, which full time employment began on or about January 2, 2011.

25.    The Company never required Ms. Bryan to sign any employment agreement, confidentiality agreement, non-compete agreement, and/or intellectual property agreement.

26.    Not long after becoming a full-time employee, Ms. Bryan was promoted to a management position within the Company.

27. After her promotion, the Company did not require Ms. Bryan to sign any employment agreement, confidentiality agreement, non-compete agreement, and/or intellectual property agreement nor did Plaintiff sign any such agreements.

28. In or around December 2018, Ms. Bryan was again promoted to Director of NCLEX Services with the Company.

29. After her promotion to Director of NCLEX Services, the Company did not require Ms. Bryan to sign any employment agreement, confidentiality agreement, non-compete agreement, and/or intellectual property agreement nor did Plaintiff sign any such agreements.

30. Ms. Bryan was employed by the Company, full-time, for approximately eleven and one-half (11.5) years.

31. At all times while employed by the Company, Ms. Bryan had full and unfettered access to her Company personnel file.

32. Ms. Bryan never observed any employment agreement, confidentiality agreement, non-compete agreement, and/or intellectual property agreement in her Company personnel file.

33. Ms. Bryan resigned from the Company on May 2, 2022.

### *Post-Resignation And The Company's Forgery*

34. The Company did not conduct any exit interview, provide any severance agreement or other agreement for Ms. Bryan to sign, and did not offer "garden leave" to her.

35. On or about May 27, 2022, Ms. Bryan received a "cease and desist" letter from the Company's counsel demanding that Plaintiff cease and desist from any violations of a purported "Confidentiality, Inventions and Non-Solicitation Agreement" (the "May 2022 Letter").

36. Ms. Bryan was shocked to receive the May 2022 Letter and perplexed by the reference in the letter to a Confidentiality, Inventions and Non-Solicitation Agreement, which was not included with the May 2022 Letter.

37. After receiving the May 2022 Letter, Ms. Bryan's Mississippi counsel contacted the Company's counsel and requested a copy of the referenced Confidentiality, Inventions and Non-Solicitation Agreement.

38. After many weeks of no response, the Company's counsel emailed a copy of the alleged Confidentiality, Inventions and Non-Solicitation Agreement (the "Agreement") to Plaintiff's Mississippi counsel.

39. The Agreement appears legible and clear except as to the signature page of the Agreement.

4

40.    Ms. Bryan maintains that she never signed the Agreement.

41.    Upon information and reasonable belief, the Company forged Ms. Bryan's signature on the Agreement after her resignation from the Company on May 2, 2022, and subsequently placed the forged document into Ms. Bryan's Company personnel file.

42.    Upon information and reasonable belief, employees in the Company's Human Resources Department were reprimanded because they were unable to locate any Agreement for Ms. Bryan.

43.    Upon information and reasonable belief, the Company forged the Agreement in an effort to suppress Ms. Bryan's new business venture and business relationships.

### *SPIN-Learning, LLC*

44.    Ms. Bryan formed SPIN to carry out her passions as she was nearing the end of her tenure with ATI.

45.    On January 22, 2022, Ms. Bryan filed a Certificate of Formation to form SPIN as a Mississippi limited liability company.

46.    Following Ms. Bryan's resignation from ATI, she endeavored to funnel her experience, skillset, and passion for education into the development of SPIN within the framework of providing educational resources to students in all academic realms.

47.    SPIN offers academic coaching services, a telephone application (or "app") that offers daily service to students, a SPIN-Academy with engaging modules, and a faculty resource center, among other things.

48.    Ms. Bryan developed original content for SPIN with her small team of like-minded educators.

49.    SPIN employs one (1) part-time employee, Dianne Harris ("Ms. Harris").

50.    To date, SPIN has had only one institutional customer, Ivy Tech Community College in Indiana ("Ivy Tech"), which grossed SPIN the total amount of approximately $2,980.00.

51.    Approximately twice per year, SPIN hosts a "Lunch and Learn" seminar which is an educational offering that is free for nursing faculty. Consistently, SPIN will have over one-hundred (100) registrants for each offering.

52.    In or around October/November 2023, SPIN formed an advisory committee to assist in the formulation of a new SPIN product. The advisory committee consisted of Ms. Harris and approximately five (5) other persons who work within various nursing programs in schools across the country.

*Company Lawsuit VS. Plaintiffs*

53.     On November 21, 2022, the Company filed a Complaint in this Court (and a First Amended Complaint on January 5, 2023), captioned <u>Ascend Learning, LLC and Assessment Technologies Institute, L.L.C. v. Bridgette Bryan and SPIN-Learning, LLC</u>, U.S. District Court for the District of MA, Civil Action No. 1:22-CV-11978 (the "Company Lawsuit").

54.     The Company Lawsuit made allegations against the Plaintiffs for alleged copyright infringement and breach of the alleged "Confidentiality, Inventions and Non-Solicitation Agreement", among other claims.

55.     While SPIN was dismissed by the Court from the Company Lawsuit, Ms. Bryan filed Counterclaims against the Company for Fraud, Forgery, and Civil Conspiracy.

56.     Upon information and reasonable belief, after the Company filed its Lawsuit against the Plaintiffs, the Company held a company-wide meeting informing its employees of the Lawsuit.

57.     Company employees were warned to have no contact with Bryan or SPIN, even for non-Company-related matters.

58.     On December 19, 2022, Ms. Harris, SPIN's sole part-time employee, received a "cease and desist" demand from the Company advising her of the Company Lawsuit and demanding she end violations of a purported non-solicitation/non-competition agreement – an agreement which Ms. Harris stated in her deposition on January 5, 2024 she had no recollection.

59.     Then, on January 13, 2023, counsel for the Company mailed Ms. Harris a copy of the Company's Amended Complaint.

60.     On or about December 11, 2023, the Company sent multiple "Keeper of the Records" subpoenas to schools to which the Company believed SPIN was marketing. The subpoenas sought all communications and/or documents by and between the school and SPIN and/or Bridgette Bryan and/or anyone with an @spin-learning.com email address.

61.     On March 1, 2024, the Company took the deposition of Alana Powers ("Ms. Powers").

62.     For approximately five (5) months in 2022, Ms. Powers had volunteered her sales experience to SPIN to help it develop a customer base.

63.     During Ms. Powers' deposition, she testified that she was a former ATI employee who, when she left ATI in or around January 2020, was sent a "cease and desist" demand letter warning her to refrain from contacting any employees of the Company.

6

*Defendants' Tortious Actions Against The Plaintiffs And Interference With SPIN's Business*

64.     Upon information and reasonable belief, after the Company Lawsuit was filed, ATI shared details of the Lawsuit with its regional Vice Presidents and instructed them to advise ATI customers and/or prospective customers of SPIN that the Plaintiffs stole ATI products and to refrain from contact with SPIN or its workers.

65.     Upon information and reasonable belief, the Company launched a 'smear' campaign against the Plaintiffs to stifle SPIN's business and deter Bryan from prosecuting her Counterclaims in the Company Lawsuit.

66.     From November 23, 2023, to November 28, 2023, there was a sudden spike in Google searches for SPIN. Upon information and reasonable belief, the unprecedented uptick in Google searches appears to coincide with the period in which the Company's representatives were directed to inform educational institutions of the pending lawsuit and accusations against Bryan and SPIN.

67.     One of SPIN's first products offered in mid-2022, after Ms. Bryan left ATI, addressed "freshman retention" in order to assist nursing programs (and other academic areas) maintain their students past their freshman year. During Ms. Bryan's development of SPIN's freshman retention product, she inadvertently emailed a PowerPoint presentation on it to her old ATI email account.

68.     At that time, the Company did not have a freshman retention program available to its customers.

69.     Yet, in August 2023, the Company suddenly had a freshman retention product which they apparently began putting together in 2022 around the time that SPIN had launched its freshman retention program.

70.     According to ATI's website, "…**in a 2022 ATI survey** of nurse educators, 71% reported significant academic struggles among first-year students, and 46% reported increased rates of first-year attrition." See https://www.atitesting.com/educator/blog/knowledge/2023/08/03/reducing-attrition-in-first-year-nursing-students (last accessed March 6, 2024) (emphasis added).

71.     Clearly the Company has been monitoring SPIN's progress and copied one of SPIN's products as its own.

72.     During the pendency of the Company Lawsuit, there have been multiple instances where the Company has purposefully and intentionally sought to harm both Plaintiffs' reputations in the industry and to outright sever Plaintiffs' business relationships.

73.     Upon information and reasonable belief, on multiple occasions, the Company, including Mr. Novorr and Ms. Miller, have sent emails and/or made phone calls to prospective SPIN

customers to advise the schools of the pending Company Lawsuit and to warn them that the Plaintiffs "stole ATI's products."

74. For example, Mr. Novorr admitted to the Director of the nursing program at Bethel University in Minnesota, Delecia Parker ("Ms. Parker"), that he reached out to multiple schools and a "number of programs" to inform them of the pending Company Lawsuit and suggested that Bryan stole the Company's products.

75. Further, Mr. Novorr informed Ms. Parker in a telephone call that Ms. Bryan violated her non-compete agreement with ATI and misused ATI's proprietary information to develop SPIN. Mr. Novorr further advised Ms. Parker that ATI would be sending subpoenas to any schools which ATI believed SPIN was marketing.

76. Upon information and reasonable belief, Mr. Novorr's intent was and is to deter educational institutions from giving SPIN any business and has had the effect of chilling SPIN's business relations.

77. Upon information and reasonable belief, Ms. Parker even noted to Mr. Novorr that she is allowed to look at products outside of ATI's offerings, which clearly indicates that Mr. Novorr's threats were an attempt to illegitimately deter Bethel University from becoming a customer of SPIN.

78. Ivy Tech falls within Mr. Novorr's geographical region in his position with ATI.

79. As a result of SPIN's working relationship with Ivy Tech in 2023, Ivy Tech invited SPIN to take part in its all-faculty/all-campus meeting in November 2023. At the meeting, Ivy Tech's Director of its nursing program connected SPIN with several key people within Ivy Tech's administration.

80. Following the all-campus meeting, Ivy Tech affirmed to SPIN that SPIN would be part of Ivy Tech's curriculum meeting which was to occur in or around March 2024.

81. However, without explanation, in late January 2024, SPIN was disinvited from the curriculum meeting.

82. Upon information and reasonable belief, Ivy Tech ended its relationship with SPIN because of Mr. Novorr and the Company's defamatory and derogatory comments and interference with SPIN and Ivy Tech's relationship.

83. Upon information and reasonable belief, just as Mr. Novorr informed ATI customers of the Company Lawsuit and unverified accusations against the Plaintiffs, so too did Ms. Miller.

84. Ms. Miller also implied to prospective customers of SPIN that Bryan "stole" products from the Company.

85.   For example, in or around late 2023, a nursing test coordinator at Stanbridge University in Irvine, CA ("Stanbridge"), Kathryn Meglitsch-Tate ("Ms. Tate"), asked SPIN if it would be willing to speak to Stanbridge's faculty on a specific topic and also showed interest in a new SPIN product that, to Plaintiffs' knowledge, has no market competitors at this time.

86.   Yet, without explanation, Stanbridge ceased communication with the Plaintiffs and is no longer showing interest in the newly developed SPIN product.

87.   Before Stanbridge ceased communication with Ms. Bryan, however, Ms. Tate informed Ms. Bryan that she had received a call from Ms. Miller advising her of the Company Lawsuit in which call Ms. Miller stated, "[d]on't you think it's odd [Bryan] left ATI and has a business with all these questions?"

88.   Ms. Miller also told Ms. Tate not to tell the Plaintiffs about her call.

89.   Additionally, SPIN was informed by the Director of a nursing program at the University of West Florida ("UWF") that an "ATI representative" had informed them that the Company was suing Bryan because she "stole" Company products.

90.   Upon information and reasonable belief, the UWF employee informed the school's legal department of the call and, subsequently, UWF received a subpoena from the Company for information on UWF's communications with SPIN.

91.   Shortly thereafter, one of SPIN's advisory committee members, who works at UWF, abruptly terminated her affiliation with SPIN.

92.   SPIN's registrants for its *Lunch and Learn* seminars, which were once very popular, has dramatically declined. For February 2024, SPIN had less than half the typical number of registrants signed up for its *Lunch and Learn* seminar.

93.   Upon information and reasonable belief, the Defendants have spread defamatory information throughout the industry – an industry which the Company has monopolized – and convinced academic programs and institutions not to patronize SPIN's business.

94.   Plaintiffs have suffered financial loss and irreparable harm to Plaintiffs' reputations in the industry.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE SHERMAN ACT AND CLAYTON ACT
### (Plaintiffs v. ATI and ASCEND (the "Company"))

95.   Plaintiffs repeat and re-allege each and every allegation contained in the Complaint and incorporate them into this count as if expressly realleged herein.

96.     The Company boasts that 1,900 nursing schools in the United States (out of approximately 2,600 total) use its products (the "Industry").

97.     At all relevant times, the Company possessed market power (i.e., "monopoly power") in its Industry, including the exclusion of competitors from their Industry.

98.     The Company has purposefully sought to sabotage and otherwise disrupt SPIN's business relationships within the Industry.

99.     The Company has also acted to suppress innovative products and methods that would increase competition and benefit the Industry.

100.    Despite the Company Lawsuit being in its infancy and there being pending Counterclaims, the Company spread misinformation to others in the Industry, along with other defamatory remarks and accusations.

101.    The conduct of Defendants caused an anti-competitive effect on interstate commerce in violation of the antitrust laws of the United States.

102.    Defendants' conduct constitutes predatory practices for the purpose of restraining and attempting to restrain trade and competition in violation of the antitrust laws of the United States.

103.    Defendants' conduct also constitutes predatory abuse of government process, specifically filing sham litigation in the judicial system for the purpose of placing Plaintiffs in further economic distress and to compel them to succumb to the unlawful demands of the Company.

104.    The conduct of the Defendants constitutes an attempt to form a monopoly in direct violation of federal law.

105.    The conduct of the Defendants was oppressive and/or unconscionable, was in violation of the Sherman Act and Clayton Act, and was done with a malicious intent to injure the Plaintiffs.

106.    As a result of the Defendants' conduct, SPIN was harmed through loss of income, added expenses, and diminished ability to compete in the marketplace.

## COUNT II
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### (SPIN v. All Defendants)

107.    Plaintiffs repeat and re-allege each and every allegation contained in the Complaint and incorporate them into this count as if expressly realleged herein.

108.   SPIN had a prospective business relationship with Ivy Tech, Stanbridge University, Bethel University, and the University of West Florida, among other schools.

109.   The Defendants knew about SPIN's prospective business relationships and caused at least Ivy Tech, Stanbridge University, Bethel University, and the University of West Florida not to enter into or continue the prospective relationship with SPIN.

110.   As set forth above in greater detail, the Defendants contacted an unknown number of schools to communicate unproven allegations against SPIN and Ms. Bryan in an effort to prevent SPIN from acquiring prospective relationships.

111.   The actions of Defendants as alleged above were done with oppression and malice constituting a tortious interference with SPIN's prospective economic advantage in the marketplace resulting in damages to SPIN.

112.   As a result of the Defendants' conduct, SPIN was harmed through loss of income, added expenses, and diminished ability to compete in the marketplace.

### COUNT III
### DEFAMATION
### (Plaintiffs v. All Defendants)

113.   Plaintiffs repeat and re-allege each and every allegation contained in the Complaint and incorporate them into this count as if expressly realleged herein.

114.   Upon information and reasonable belief, the Company intentionally and/or recklessly falsely informed their employees and some customers that Bryan "stole" Company products.

115.   Upon information and reasonable belief, on multiple occasions, the Company, including Mr. Novorr and Ms. Miller, have sent emails and/or made phone calls to prospective SPIN customers to advise the schools of the pending Company Lawsuit and to warn them that the Plaintiffs "stole ATI's products."

116.   Mr. Novorr admitted to a potential SPIN customer that he reached out to multiple schools and a "number of programs" to inform them of the pending Company Lawsuit and suggested that Bryan stole the Company's products.

117.   Further, Mr. Novorr informed Ms. Parker in a telephone call that Ms. Bryan violated her non-compete agreement with ATI and misused ATI's proprietary information to develop SPIN – without mentioning that Ms. Bryan has denied signing such an agreement or that she has Counterclaims against the Company for forgery.

118.   As described above, Ms. Miller implied to prospective customers of SPIN that Bryan "stole" products from the Company.

119.   Additionally, a yet unknown "ATI representative" informed UWF contacts that the Company was suing Bryan because she "stole" Company products.

120.   Through their defamatory statements, the Defendants have injured both Plaintiffs' reputations in the community.

121.   The Defendants knew, foresaw, and intended that their statements would be shared with prospective customers of SPIN.

122.   The Plaintiffs suffered irreparable damage to their reputations and esteem, as well as a loss of associations, and loss of potential business, as a result of the Defendants' conduct.

## COUNT IV
## COMMERCIAL DISPARAGEMENT
### (Plaintiffs v. All Defendants)

123.   Plaintiffs repeat and re-allege each and every allegation contained in the Complaint and incorporate them into this count as if expressly realleged herein.

124.   Upon information and reasonable belief, the Company intentionally and/or recklessly falsely informed their employees and some customers that Bryan "stole" Company products.

125.   Upon information and reasonable belief, on multiple occasions, the Company, including Mr. Novorr and Ms. Miller, have sent emails and/or made phone calls to prospective SPIN customers to advise the schools of the pending Company Lawsuit and to warn them that the Plaintiffs "stole ATI's products."

126.   Mr. Novorr admitted to a potential SPIN customer that he reached out to multiple schools and a "number of programs" to inform them of the pending Company Lawsuit and suggested that Bryan stole the Company's products.

127.   Further, Mr. Novorr informed Ms. Parker in a telephone call that Ms. Bryan violated her non-compete agreement with ATI and misused ATI's proprietary information to develop SPIN – without mentioning that Ms. Bryan has denied signing such an agreement or that she has Counterclaims against the Company for forgery.

128.   As described above, Ms. Miller implied to prospective customers of SPIN that Bryan "stole" products from the Company.

129.   Additionally, a yet unknown "ATI representative" informed UWF contacts that the Company was suing Bryan because she "stole" Company products.

130.   The Defendants negligently made false and disparaging statements concerning the Plaintiffs in which the Defendants alleged that Bryan violated an agreement with the Company and stole products from the Company.

131.    The Defendants made the false and disparaging statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

132.    Defendants intended to cause pecuniary harm to Plaintiffs' interests or knew that pecuniary harm was a foreseeable result of the disparaging statements.

133.    Defendants are liable to Plaintiffs for the damages they have suffered, and continue to suffer, as a result of the defamatory statements in an amount to be determined at trial, together with interest and costs including reasonable attorneys' fees.

**COUNT V**
**UNFAIR AND DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF**
**M.G.L. c. 93A, §§ 2 and 11**
**(SPIN v. ATI and ASCEND (the "Company"))**

134.    Plaintiffs repeat and re-allege each and every allegation contained in the Complaint and incorporate them into this count as if expressly realleged herein.

135.    The actions of the Defendants, as alleged above, constitute fraudulent or unfair business practices and unfair competition within the meaning of Massachusetts General Law Chapter 93A, § 11.

136.    The conduct of the Company, as set forth in this Complaint, was oppressive and/or unconscionable, violated M.G.L. c. 93A, §§ 2 and 11, and the regulations promulgated thereunder, and was knowing and willful.

137.    As a direct and proximate result of the Defendants' conduct, SPIN was harmed through loss of income, added expenses, and diminished ability to compete in the marketplace, which damages shall be trebled in accordance with Massachusetts General Law Chapter 93A, § 11 and awarded to SPIN.

**COUNT VI**
**INJUNCTIVE RELIEF**
**(Plaintiffs v. All Defendants)**

138.    Plaintiffs repeat and re-allege each and every allegation contained in the Complaint and incorporate them into this count as if expressly realleged herein.

139.    As a result of Defendants' acts and/or omissions, Plaintiffs have sustained, and will continue to sustain, irreparable injury including, but not limited to, damage to their reputations, lost profits, and loss of business contacts.

140.    Plaintiffs are entitled to a preliminary and permanent injunctive relief enjoining Defendants from making the false, misleading and/or deceptive statements, as alleged above, regarding the Plaintiffs' personally and in a business context.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs, Bridgette Bryan and SPIN-Learning, LLC, respectfully pray that

this Honorable Court:

A.      Enter judgment in favor of the Plaintiffs on all counts of this Complaint;

B.      Grant preliminary and permanent injunctive relief enjoining Defendants from making the
        false, misleading and/or deceptive statements, as alleged above, regarding the Plaintiffs'
        personally and in a business context;

C.      Order the Defendants to retract all misleading and/or deceptive statements of fact alleged
        above;

D.      Award Plaintiffs compensatory, expectation, punitive, multiple, and exemplary damages
        in an amount to be determined at trial;

E.      Award the Plaintiff reasonable costs, expenses, interest and attorney's fees in an amount to
        be determined at trial;

F.      Award Plaintiff multiple damages and reasonable attorneys' fees, expenditures and court
        costs pursuant to M.G.L. c. 93A or as otherwise available at law; and,

G.      Grant such other relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs, Bridgette Bryan and SPIN-Learning, LLC, hereby demand a trial by jury on all

issues so triable.

Respectfully submitted,

**Plaintiffs,**
**BRIDGETTE BRYAN and SPIN-LEARNING,**
**LLC**

By their attorneys,

/s/ *Amie D. Joseph*
Travis J. Jacobs, Esq. (MA BBO# 691721)
Amie D. Joseph, Esq. (MA BBO# 662558)
THE JACOBS LAW LLC
1359 Hancock Street, Suite 10
Quincy, MA 02169
(800) 652-4783 (p) / (888) 613-1919 (f)
TJacobs@TheJacobsLaw.com
AmieD@TheJacobsLaw.com

DATED: March 6, 2024